**UNITED STATES of America,**
**Appellee,**

v.

**Ibrahim KURTI, Defendant–Appellant.**

**Docket No. 04–2239–CR.**

United States Court of Appeals,
Second Circuit.

Argued: May 19, 2005.

Decided: Oct. 19, 2005.

judges. *See* 2d Cir. R. § 0.14(b) (interim rule).

Gary Becker (Law Office of Eric Franz, Of Counsel) New York, NY, for Defendant–Appellant.

David N. Kelley, United States Attorney for the Southern District of New York (Mark A. Racanelli, Jonathan R. Streeter, Adam B. Siegel, Assistant United States Attorneys, Of Counsel) New York, NY, for Appellee.

Before: WINTER, KATZMANN, Circuit Judges, and MURTHA, District Judge.*

MURTHA, District Judge.

## I. BACKGROUND

On July 23, 2003, the defendant-appellant, Ibrahim Kurti, waived indictment and consented to the filing of a superseding information which charged him with one count of participating in a conspiracy to distribute and possess with intent to distribute quantities of ecstasy and one count of participating in a conspiracy to distribute and possess with intent to distribute 50 kilograms or more of marijuana, both in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C). That same day, Kurti pled guilty to both counts of the information.

On October 7, 2003, Judge Preska held a hearing pursuant to *United States v. Fatico,* 603 F.2d 1053 (2d Cir.1979), to determine: (1) the quantities of ecstasy and marijuana involved in Kurti's offenses; and (2) whether Kurti's possession of a firearm and/or his leadership role in the offenses merited an enhancement under the Sentencing Guidelines.

On April 14, 2004, the judge issued her *Fatico* hearing findings and sentenced the defendant. She found over 240,000 ecstasy pills and approximately 200 to 400 kilograms of marijuana attributable to Mr. Kurti's criminal activities. These findings indicated a base offense level of 38 (A–159).

The court further found the credible testimony established Kurti possessed a firearm while operating his ecstasy business from his apartment, resulting in a two-level enhancement (A–160), and that he supervised more than five individuals, resulting in an additional three-level enhancement (A–163). She then afforded Kurti a three-point reduction for acceptance of responsibility. Based on these findings and applying the November 2002 Sentencing Guidelines, the judge determined Kurti's total offense level to be 40.

Judge Preska also established Kurti's criminal history category to be III, based on, *inter alia,* his prior conviction in New

* The Honorable J. Garvan Murtha, United States District Judge for the District of Vermont, sitting by designation.

York state court for robbery in the third degree (A–164). This yielded a Guideline range of 360 months to life imprisonment. *See* 2001 U.S.S.G. §§ 2D1.1(a)(2) (base offense level of 38), 2D1.1(b)(1) (weapon enhancement), 3B1.1(b) (enhancement for organizer or leader role). The court sentenced Kurti to a term of 360 months' imprisonment, followed by three years' supervised release, and imposed a mandatory $200 special assessment (A–167).

## II.  DISCUSSION

### A.  Double Jeopardy Claim

Kurti pled guilty to two separate charges: one conspiracy to possess and distribute ecstasy and one conspiracy to possess and distribute marijuana. *See United States v. Papadakis,* 510 F.2d 287, 296 (2d Cir.1975) (a defendant may simultaneously be a member of two conspiracies, even if he entered into them both at the same time). By entering this plea, Kurti admitted not simply that he committed specific acts, but that he is guilty of two specific, distinct substantive offenses. *United States v. Broce,* 488 U.S. 563, 569–70, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

■ For the first time on appeal, he claims the information's two conspiracy charges are multiplicitous and his plea to these two charges violates the Double Jeopardy Clause. *See United States v. Chacko,* 169 F.3d 140, 145 (2d Cir.1999) (a multiplicitous indictment "violates the Double Jeopardy Clause . . ., subjecting a person to punishment for the same crime more than once."). "Generally, the rights afforded by the Double Jeopardy Clause are personal and can be waived by a defendant." *United States v. Mortimer,* 52 F.3d 429, 435 (2d Cir.1995). Where, as here, a defendant has validly entered a guilty plea, he essentially has admitted he committed the crime charged against him,

and this fact results in a waiver of double jeopardy claims. *See, e.g., United States v. Leyland,* 277 F.3d 628, 632 (2d Cir. 2002); *United States v. Chacko,* 169 F.3d at 145–46; *United States v. Brown,* 155 F.3d 431, 434 (4th Cir.1998). "Conscious relinquishment of the double jeopardy claim is not required because the guilty plea constitutes an admission sufficient to establish that defendant committed a crime, not an inquiry into a defendant's subjective understanding of the range of potential defenses." *Leyland,* 277 F.3d at 632 (quotations omitted).

■ Furthermore, the narrow exception to the waiver rule does not apply in this case. Some courts have noted that an exception to the waiver rule applies when a double jeopardy claim is so apparent either on the face of the indictment or on the record existing at the time of the plea that the presiding judge should have noticed it and rejected the defendant's offer to plead guilty to both charges. *See Thomas v. Kerby,* 44 F.3d 884, 888 (10th Cir.1995). In this case, the double jeopardy claim the defendant now attempts to raise was not apparent on the face of the information, which charged two separate conspiracies. In addition, this claim was not apparent from the record before the trial court in that, during his plea allocution, Kurti acknowledged conduct which supported his plea to participation in two separate conspiracies. In conclusion, since, by his plea agreement, the defendant waived this issue, we do not reach the merits of Kurti's double jeopardy claim. *See Mortimer,* 52 F.3d at 435.

### B.  Ineffective Assistance of Counsel Claim

Kurti also argues the failure of his trial counsel to raise the multiplicity/double jeopardy issue constituted ineffective assistance of counsel, a claim which we will

consider. *See United States v. Gaskin,* 364 F.3d 438, 468 (2d Cir.2004) (when faced with such a claim on direct appeal, the court may "decide the claim on the record before us.") (citations and quotations omitted).

■ To establish a claim of ineffective assistance, the defendant must establish: (1) "that counsel's performance was so unreasonable under prevailing professional norms that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment, ... and (2) that counsel's ineffectiveness prejudiced the defendant such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 468 (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); quotations omitted).

■ As to the first part of the *Strickland* test, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," that "[t]here are countless ways to provide assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a client in the same way." 466 U.S. at 689, 104 S.Ct. 2052. To prevail on the second part of the *Strickland* test, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. 2052.

Kurti argues his trial attorney's failure to object to the multiplicitous charges in the information caused him to plead to two conspiracies and to be sentenced twice for participating in what was actually one conspiracy. Kurti pled guilty to an information which charged him with one count of conspiracy with intent to distribute and possess with intent to distribute ecstasy and one count of conspiracy with intent to distribute and possess with intent to distribute 50 kilograms of marijuana, both in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C). The plea agreement provided that each of those counts carried a possible penalty of 20 years' imprisonment.

■ In exchange, the Government agreed not to prosecute the defendant for multiple firearms and ammunition charges, and the Government did not require him to plead to any substantive offenses arising from his distribution of ecstasy and marijuana. Furthermore, the defendant was not required to stipulate to a quantity of narcotics, to possession of firearms, or to other facts related to his role in the offenses, thereby requiring the Government to meet its burden of affirmatively proving these elements at the later *Fatico* hearing. Because of the plea agreement negotiated by his counsel, he avoided trial on substantive narcotics and firearms charges which could have resulted in an even longer term of imprisonment. Although Kurti faced a total maximum term of imprisonment of 40 years as a result of his plea, he received a sentence of 30 years' imprisonment.

At sentencing, the defendant specifically indicated he was satisfied with his attorney's performance. Viewed in its entirety, the record shows defendant's attorney's strategic advice fell within "prevailing professional norms" and otherwise does not support the claim that Kurti was afforded ineffective assistance of counsel. *See Gaskin,* 364 F.3d at 470 ("A defense attorney does not render objectively unreasonable representation when he advises his client to act in a way that secures a reduced sentence.").

### C. Sentencing Claim

The District Court imposed a single sentence of 360 months' imprisonment, de-

spite the fact that Kurti was sentenced on two counts, each carrying a statutory minimum term of 20 years' imprisonment. The Court did not specify either the length of time to be served on each count or which portion of the sentence of a count was to run consecutively to the other.

When the District Court is imposing a sentence on multiple counts, U.S.S.G. § 5G1.2(d) specifies: "If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law." Accordingly, the District Court was required to specify the length of time to be served on each count and whether those sentences run consecutively or concurrently. *See, e.g., United States v. Fuller,* 332 F.3d 60, 68 (2d Cir. 2003) ("the correct way to have sentenced Fuller to implement [the] orally pronounced total punishment of 151 months would have been to sentence him to 120 months on the felon-in-possession count and 60 months on the bail-jumping charge, with 31 months of the latter sentence to run consecutively"), *vacated on other grounds sub nom., Wint v. United States,* — U.S. —, 125 S.Ct. 1055, 160 L.Ed.2d 999 (2005); *United States v. McLeod,* 251 F.3d 78, 83 (2d Cir.2001) ("The correct method of imposing sentences on multiple counts has three steps," including comparing the "total punishment" to the highest statutory maximum of all counts and then determining whether concurrent or consecutive sentences are appropriate.).

As a result of *United States v. Booker,* — U.S. —, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), § 5G1.2(d) of the Sentencing Guidelines is advisory. The parties agree that, in light of recent Supreme Court pronouncements on federal sentencing law and the failure to comply with U.S.S.G. § 5G1.2(d), the matter should be remanded for resentencing. *See United States v. Crosby,* 397 F.3d 103, 117–18 (2d Cir.2005) (remand warranted to afford sentencing judge the opportunity to determine whether original sentence would have been nontrivially different under post-*Booker/Fanfan* regime); *Fuller,* 332 F.3d at 68 (aggregate sentence required remand).

### III.  CONCLUSION

We AFFIRM the judgment of conviction, and REMAND for resentencing in light of *United States v. Booker,* — U.S. —, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005), and consistent with this opinion.